# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RYSHEEN A. JACKSON,** | : | **CIVIL NO. 3:11-CV-1791** |
| Plaintiff, | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **LT. E. MORRISON, et al.,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Rysheen Jackson ("Jackson"), a former Pennsylvania state inmate who, at all times relevant, was housed at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), commenced this civil rights action on September 28, 2011. (Doc. 1.) Named as defendants are Superintendent Tabb Bickell, Edward B. Morrison, Kevin Kauffman, Charles Mitchell, Joel B. Keller, Brian Corbin, Mark Garman, Michael Ciavarella, James Eckard, Constance Green, Dorina Varner, and Robert B. MacIntyre. Before the court is a motion for summary judgment pursuant to Federal Rules of Civil Procedure 56, filed on behalf of both defendants. (Doc. 16.) For the reasons set forth below, the motion will be deemed unopposed and granted.

## I. Procedural Background

On December 11, 2012, defendants filed a motion for summary judgment. (Doc. 33.) The statement of material facts (Doc. 34), exhibits (Doc. 35), and supporting brief (Doc. 36) were filed on that same date. Jackson moved for an extension fo time to file a brief in opposition to the motion on January 14, 2013 (Doc. 38), and March 11, 2013 (Doc. 43). On

both occasions, Jackson was afforded additional time to oppose the motion. (Docs. 41, 45.) He failed to file a brief in opposition to the motion. Rather, on April 30, 2003, he moved to stay the proceedings. On May 17, 2013, an Order issued informing him that his motion to stay was denied but that he would be afforded until July 3, 2012, to file an opposition brief and a statement of material facts. (Doc. 48). He was advised that failure to file a statement of material facts would result in defendants' statement of material facts being deemed admitted. (Doc. 48; L.R. 56.1.) Additionally, it was noted that the brief was originally due on December 26, 2012, and Jackson was informed that no further enlargements of time would be granted. (Id.; L.R. 7.6.) The time period for filing a brief and statement of material facts has expired. Consequently, the motion is deemed unopposed.

## II.     Summary Judgment Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "'The non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial.' Celotex [ ], 477 U.S. [ ] 324 [ ] (1986)

(internal quotations omitted)." Schiazza v. Zoning Hearing Bd., Fairview Twp., York County, Pa, 168 F. Supp. 2d 361, 365 (M.D. Pa. 2001). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### III. Statement of Material Facts

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. Id. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id. Because plaintiff failed to oppose defendants' statement, all facts contained therein are deemed admitted.

At all times relevant, Jackson was incarcerated at SCI-Huntingdon. (Doc. 34, at ¶ 2.) Upon commencement of his incarceration, he received a copy of the Pennsylvania Department of Corrections ("DOC" or "Department") Inmate Handbook. (Id. at ¶ 3; Doc. 35-2, at 17-70.) The Inmate Handbook helps inmates understand what will be encountered upon entering confinement and assists in adjustment to facility life. (Doc. 34, at ¶ 4; Doc. 35-2, at 17-70.) All of the DOC policies containing rules that directly affect inmates are

available on each housing unit and in the library at each institution. (Id. at ¶6; Id.) Inmates are responsible for knowing and following all of the DOC's rules that directly affect them. (Id. at ¶5; Id.)

### A. Misconducts B15536 & B157833

On March 16, 2011, Jackson received Misconduct B155136 for refusing to obey an order and being in an unauthorized area. (Doc. 34, ¶ 7; Doc. 35-8, at 12.) He pled guilty to Misconduct B155136. (Id. at ¶8; Doc. 35-8, at 15.) When deciding on the sanction to impose upon Jackson, Hearing Examiner Mitchell did not consider whether he was assisting other inmates with their legal issues or that he was a black male. (Doc. 34, at ¶ 9.) Rather, he followed DOC policies and would have made the same decision regardless because his conduct violated policy. (Id.) He was sanctioned thirty days in disciplinary custody as of March 16, 2011, and placed in the restricted housing unit ("RHU"). (Id. at ¶¶ 9-10.)

When an inmate is placed in the RHU, the receiving officer is required to inventory all personal property. (Doc. 34, at ¶ 11; Doc. 35-2, at 127-129.) Upon his admission to the RHU on March 16, 2011, staff inventoried Jackson's property, and found that he was in possession of legal materials belonging to Inmate Brice Allen.[1] (Id. at ¶12; Doc. 35-5, at 10.) He was issued Misconduct B157833 for I-44 Loaning or borrowing property and I-51 Possession of any item not authorized for retention or receipt by inmate not enumerated as

---

[1]This was not the first time he was found to be in possession of another inmate's property as he had been reminded to return all property belonging to others on February 25, 2011. (Id. at ¶ 12(a); Doc. 35-7, at 20; Doc. 35-5, at 12.)

4

Class I contraband.[2] (Id. at ¶ 13; Doc. 35-2, at 163.) Jackson pled guilty to the infractions. (Id. at ¶ 14; Id. at 164.) Hearing Examiner Mitchell sanctioned him to fifteen days in disciplinary custody (in addition to the time he was serving for Misconduct B155136), which is within the guidelines permitted under DC-ADM 801. (Id. at ¶ 15; Doc. 35-11, at 18; Doc. 35-10, at 21-45.) In making his decision, Hearing Examiner Mitchell did not consider whether Jackson was assisting other inmates with their legal issues or that he was a black male. (Doc. 34, at ¶ 16.) He was following the policies of the DOC and would have made the same decision regardless because Jackson's conduct violated policy. (Id.)

Plaintiff appealed the severity of the punishment to the Program Review Committee ("PRC"). (Doc. 34, at ¶ 17.) An appeal from a guilty plea may only be advanced if the procedures employed were contrary to law, Department directives, or regulations, the punishment is disproportionate to the offense, and/or the findings of fact were insufficient to support the decision. (Id. at ¶ 18; Doc. 35-2, at 131-155.) PRC members Joel Keller, Brian Corbin and Mark Garman upheld the decision of the hearing examiner based on the contents of Misconduct B157833 and enhanced by Jackson's guilty plea. (Doc. 34, at ¶¶ 19-21.) It was also determined that the sanction was within the guidelines of DC-ADM 801. (Id. at ¶ 21.) The PRC did not consider whether Jackson was assisting other inmates with their legal issues or that he was a black male; they would have made the same decision regardless of whether he was assisting other inmates because his appeal lacked merit. (Id. at ¶ 22.)

---

[2] Inmate Allen did not receive a misconduct in regards to this incident. (Id. at ¶ 12b.)

Jackson then filed an appeal with the Facility Manager on April 4, 2011. (Id. at ¶ 23.) Superintendent Bickell upheld the sanction and noted that Jackson had been warned to stop keeping other inmates' legal work in his property. (Id. at ¶ 24.) Superintendent Bickell did not consider whether Jackson was assisting other inmates with their legal issues or that he was a black male; he was following the policies of the DOC and would have made the same decision regardless. (Id. at ¶ 25.)

Jackson filed a final appeal with the Office of Chief Hearing Examiner. (Id. at ¶ 26.) Chief Hearing Examiner Robert MacIntyre denied the appeal based on Jackson's guilty plea at the misconduct hearing and his determination that there was no evidence in the record that suggested any evidence that was contrary to law, policy or regulations. (Id. at ¶¶ 27, 28.) Chief Hearing Examiner MacIntyre did not consider whether Jackson was assisting other inmates with their legal issues; he was following the policies of the Department and would have made the same decision regardless. (Id. at ¶ 29.)

None of the named defendants had an understanding or agreement to issue misconducts to Jackson, subsequently punish him, or transfer him. (Id. at ¶ 30.) Defendants Ciavarella, Eckard, Green, Kauffman, and Morrison had no personal involvement in any level of Misconduct B157833. (Id. at ¶ 31.)

### B. Property Exemption

Pursuant to the Inmate Handbook, an inmate may not possess the property of another inmate as it considered contraband. (Doc. 34, at ¶ 32.) Moreover, there are specific limitations on the amount of property an inmate is allowed to have while he is incarcerated. (Id. at ¶ 33.) In February 2011, Jackson requested permission to have an exemption to the property rule in order to have five legal boxes for his pending legal action, Jackson v. Gordon, 3:03-CV-01725-JMM-EC. (Id. at ¶ 34.) By memo dated February 25, 2011, Acting Deputy Superintendent Eckard advised Jackson that he was discovered to be in possession of property that belonged to other inmates. (Id. at ¶35.) He was therefore advised to bring his property into compliance with policy and work with staff at the institution to return the property to the inmates to whom it belongs. (Id.; Doc. 35-7, at 27.)

On March 16, 2011, two boxes consisting of legal material were again confiscated from Jackson's property because he had legal materials belonging to other inmates. (Doc. 34, at ¶ 36; Doc. 35-5, at 10.) None of the named defendants had any involvement in ordering Jackson's property to be confiscated or any understanding or agreement to have Jackson's property confiscated and kept away from him. (Id. at ¶ 37.)

On March 20, 2011, Jackson sent correspondence stating he had removed all other inmate property from his own property and he now had two boxes of his own legal material, and that he was requesting an exemption for his case, Jackson v. Gordon, 3:03-CV-01725-JMM-EC. (Id. at ¶ 38; Doc. 35-5, at 12.) On March 23, 2011, Acting Deputy Superintendent Eckard advised Jackson that he did not see a need to store the extra

property as the file had been closed since 2005. (Id. at ¶ 39; Doc. 35-5, at 14.) In making his decision, Acting Deputy Superintendent Eckard did not consider whether Jackson was assisting other inmates with their legal issues or his pending litigation against the Department; he was following the policies of the DOC and would have made the same decision regardless. (Id. at ¶ 40.)

Jackson filed Grievance 359130 on March 28, 2011, challenging Acting Deputy Superintendent Eckard's response because Jackson v. Gordon had been stayed, not closed. (Doc. 34, at ¶ 41; Doc. 35-7, at 37.) On March 30, 2011, Deputy Superintendent Corbin responded to Grievance 359130 stating he had researched the docket in the Jackson v. Gordon case and there had been no activity in the matter since January 2006, and that it was unlikely at that time that the matter would be reactivated. (Id. at ¶ 42; Doc. 35-4, at 46.) As a result of this finding, the request for the legal exemption was denied. (Id.)

He filed an appeal to Superintendent Bickell who concurred with the response of Deputy Superintendent Corbin and found the grievance to be without merit. (Id. at ¶ 43.) Superintendent Bickell did not consider whether Jackson was assisting other inmates with their legal issues; he was following the policies of the DOC and would have made the same decision regardless of whether he was assisting other inmates because his conduct violated policy. (Id. at ¶ 44.)

Jackson filed a final appeal with the Secretary's Office of Inmate Grievances and Appeals. (Doc. 34, at ¶ 45.) On May 19, 2011, Chief Hearing Officer Dorina Varner upheld the responses to the prior appeals based upon the inactivity in Jackson v. Gordon, and not for

8

any retaliatory reason. (Id. at ¶¶ 46-47.)

### C. Transfer to the State Corrections Institute at Houtzdale

Jackson was transferred to the State Corrections Institute at Houtzdale on January 5, 2012 due to Misconduct B155136. (Doc. 34, at ¶¶ 48-49.) He was also provided with "Other Report B15526," which confirms he was transferred for safety and security reasons. (Id. at ¶ 50; Doc. 35-2, at 172.) There are additional confidential details of the safety and security reasons for Jackson's transfer which are set forth in the documents filed under seal. (Id. at ¶ 51; Doc. 22.) Plaintiff was transferred for the reasons set forth in "Other Report" B15526 and the documents filed under seal and not for assisting other inmates with their legal issues, having pending litigation against the Department, or for being a minority. (Id. at ¶ 52.)

## IV. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d

1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A. Conspiracy

Jackson alleges in Counts I, II, IV, V, VI and VII, that defendants engaged in various conspiracies to retaliate against him, punish him, discriminate him, and transfer him from one correctional institution to another. In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n.8 (3d Cir. 1990). See also, Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. See id.; Rose,

10

871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young, 926 F.2d at 1405 n.16.

Jackson alleges in conclusory fashion that defendants' conspired against him. The complaint is devoid of specific facts which tend to show a meeting of the minds and some concerted activity. Rather, he relies on subjective suspicions and unsupported speculation, which is insufficient to state a conspiracy claim. The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Jackson has failed to meet his burden in that he has completely failed to oppose defendants' motion. Accordingly, the motion for summary judgment will be granted on Counts I, II, IV, V, VI and VII.

### B. Equal Protection

Jackson alleges that defendants Mitchell, Bickell and MacIntyre "collectively, and intentionally" discriminated against him "as a class of one by treating him differently than those similarly situated." (Doc. 1, at 18.) He specifically alleges that he was treated differently than inmate Brice Allen in the context of the issuance of misconducts. (Id.)

1. Defendants Bickell and MacIntyre

Defendants Bickell and MacIntyre seek judgment based on their lack of personal

11

involvement. (Doc. 36, at 18.) "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, *supra*. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208. The involvement of defendants Bickell and MacIntrye was limited to their review of the decision made by defendant Mitchell at the misconduct hearing. However, participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v.

Pennsylvania Dept. of Corrections, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Defendants Bickell and MacIntyre are therefore entitled to an entry of summary judgment on Count III.

### 2. Defendant Mitchell

Plaintiff alleges that when he was found to be in possession of inmate Brice Allen's property, he was treated differently than inmate Allen in that he was issued a misconduct and sanctioned by defendant Mitchell while the misconduct filed against Allen was dismissed by defendant Mitchell. (Doc. 1, at 8.) The Equal Protection Clause guarantees all citizens "equal protection of the laws," meaning that similarly situated people must be treated the same. U.S. Const. amend. XIV. It appears from the complaint that Jackson is asserting a "class of one" equal protection claim in accordance with Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), which provides for "a class of one claim where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in the treatment." Id.; Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

"To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); see also Jean–Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012). Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended

to discriminate.  See Vill. of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264–66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244–45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor.  See Vill. of Arlington Heights, 429 U.S. at 265–66.  Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment.  See Bd. of Trustees v. Garrett, 531 U.S. 356, 367 (2001); Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir.2002).

Based on Jackson's allegations that his equal protection rights were violated because he was issued a misconduct and another inmate's misconduct was dismissed, and in light of the aforementioned case law, Jackson has failed to present either direct or circumstantial evidence that he was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in the treatment.[3]  Consequently, summary judgment will be entered in favor of defendant Mitchell on Count III.

---

[3] According to defendants, Allen was never issued a misconduct.  (Doc. 34, at ¶ 12b.)

## V. Conclusion

Based on the foregoing, defendants' motion for summary judgment will be deemed unopposed and granted.

                                 **BY THE COURT:**

                                 **s/James M. Munley**
                                 **JUDGE JAMES M. MUNLEY**
                                 **United States District Court**

Dated:   July 18, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**RYSHEEN A. JACKSON,** : **CIVIL NO. 3:11-CV-1791**
    **Plaintiff,** :
 : **(Judge Munley)**
    **v.** :
 :
**LT. E. MORRISON, et al.,** :
    **Defendants** :

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this 18th day of July 2013, upon consideration of defendants' motion for summary judgment (Doc. 33) it is hereby **ORDERED** that:

1. Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. 33) is DEEMED unopposed and GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**